# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| REBECCA GORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-09-340-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Rebecca Gore requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the decision of the Commissioner is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on March 31, 1976, and was thirty-two years old at the time of the administrative hearing. She has an eighth grade education and has worked as a nurse's aide, cook, cashier, asphalt worker, and fast food worker (Tr. 22). The claimant alleges that she has been unable to work since November 20, 2005, because of psychosis, bipolar disorder, and back problems (Tr. 113).

**Procedural History**

On September 28, 2006, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Osly F. Deramus determined that the claimant was not disabled in a written opinion dated May 15, 2009. The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step two of the sequential evaluation. He found that the claimant did have medically determinable impairments that could reasonably cause her symptoms, *i. e.*, affective mood disorder, history of methamphetamine abuse, back pain, and hepatitis C (Tr. 12), but that such impairments were not severe (Tr. 12). The ALJ concluded that the claimant was thus not disabled (Tr. 17).

## Review

The claimant challenges the ALJ's step two finding that none of her impairments are severe. She argues that the ALJ erred in particular: (i) by focusing on her lack of significant mental health treatment; and, (ii) by failing to properly analyze the medical evidence related to her mental health impairments. Because the ALJ did fail to properly analyze the evidence of the claimant's mental impairments, the Commissioner's decision must be reversed and the case remanded to the ALJ for further proceedings.

The medical evidence reveals that the claimant was admitted to Twelve and Twelve in Tulsa, Oklahoma for detoxification related to methamphetamine abuse on August 29, 2006 (Tr. 205). On that date, the claimant's Level of Functioning (LOF) score was established at 23 (Tr. 203). Apparently, at some point prior to her admission to Twelve and Twelve, claimant attempted to commit suicide (Tr. 199). On September 5, 2006, claimant was prescribed Risperdal and Trazadone for her reported auditory and visual hallucinations.

The claimant then began receiving mental health treatment from the Mental Health and Substance Abuse Centers of Southern Oklahoma (MHSASO) on September 27, 2006 (Tr. 230). At that time, claimant again reported having delusions and hallucinations with problems related to, inter alia, concentration, judgment, depression, social anxiety, and conflict (Tr. 236-37). She reported that her auditory hallucinations preceded her drug use, but that her visual hallucinations were associated with drug use (Tr. 239). Her LOF at that time was a 55 (Tr. 243). Claimant reported to MHSASO for treatment on October 25, 2006, at which time she reported that she has "difficulty getting along with employers

and coworkers" and was experiencing "slightly increased depression" (Tr. 244). The counselor noted that claimant's "symptoms appear present justifying diagnosis, [but] significant progress in therapy may be difficult and slow due to client's incentives to maintain being sick" (Tr. 244).

In addition, the claimant was evaluated by two state physicians. First, Dr. Patrick Turnock, Ph.D. examined claimant on April 7, 2007 and found that she suffers from schizoaffective disorder (Tr. 255). He wrote that claimant had had prior difficulty holding a job because of conflict at the workplace (Tr. 253), and that he thought that "[c]ontinued mental health treatment . . . is highly recommended for [the claimant]." Dr. Turnock also expressed that the claimant's mood and demeanor during examination did not coincide with claimant's reported symptoms, but could not pinpoint an explanation for the discrepancies (Tr. 255). On May 2, 2007, Dr. Cox also concluded that claimant suffered from schizoaffective disorder, and found that she had moderate limitations in the areas of social functioning and maintaining concentration, persistence or pace (Tr. 277). He also performed a Mental Residual Functional Capacity Assessment (RFC) and opined that claimant was markedly limited in the ability to understand, remember, and carry out detailed instructions and moderately limited in the following areas: i) ability to carry out short and simple instructions; ii) sustain an ordinary routine without special supervision; iii) ability to make simple work-related decisions; iv) ability to work in coordination with or proximity to others without being distracted by them; v) ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; vi) ability to interact appropriately with the general public; vii) ability to accept instructions

and respond appropriately to criticism from supervisors; viii) ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and ix) ability to respond appropriately to changes in the work setting (Tr. 281-82).

A claimant has the burden of proof at step two of the sequential analysis to show that she has an impairment severe enough to interfere with the ability to work. *Bowen v. Yuckert*, 482 U.S. 137 (1987). This determination "is based on medical factors alone, and 'does not include consideration of such vocational factors as age, education, and work experience.'" *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004), *quoting Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Although a claimant "must show more than the mere presence of a condition or ailment[,]" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), the claimant's step-two burden only requires a "de minimis" showing of impairment. *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997), *citing Williams*, 844 F.2d at 751. A finding of non-severity may be made only when the medical evidence establishes a slight abnormality or a combination of slight abnormalities which would not have any more than a minimal effect on an individual's ability to work. *Hinkle*, 132 F.3d at 1352.

The ALJ relied in part on the lack of significant mental health treatment during the relevant time frame to discard of claimant's allegedly severe mental health impairments. However, there is no requirement that claimant obtain *any* mental health treatment, let alone *significant* mental health treatment, in order to find that a claimant has a severe mental impairment. *See Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 739 (10th Cir. 2007) ("[W]e have found no case authority requiring [a claimant] to obtain medical

treatment from [a specialist in the mental health profession] before an ALJ can find that she has a severe mental impairment.").

The ALJ also failed to adequately discuss portions of the relevant evidence related to claimant's mental health impairments. For instance, the ALJ found that the claimant had no limitations in the area of activities of daily living, only mild limitations in the areas of social functioning and concentration, persistence or pace, and no episodes of decompensation (Tr. 14). In so finding, the ALJ appears to have relied on the opinion of examining physician Dr. Turnock and expressly disregarded the findings of non-examining physician Dr. Cox. The ALJ stated that he disagreed with the findings of Dr. Cox, but failed to adequately explain *why* he disagreed with Dr. Cox's findings. Further, the ALJ alludes to a finding that Dr. Cox's findings were somehow inconsistent with Dr. Turnock's findings without explaining *how* the opinions differed, which is notable especially in light of the fact that both physicians similarly concluded that claimant suffered from schizoaffective disorder (Tr. 255, 267). *See, e.g., Confere v. Astrue*, 235 Fed. Appx. 701, 703 (10th Cir. 2007) ("The ALJ mentions Dr. Heinbecker's assessment during his discussion of the evidence . . . but he does not state that he is rejecting any part of it and gives no indication as to why he would disregard [that part of] Dr. Heinbecker's conclusion that [was inconsistent with the ALJ's RFC determination]. . . . The ALJ could not have accepted and incorporated the opinions of the state agency physicians into his RFC because his RFC directly conflicts with [their] assessment.") [unpublished opinion].

Further, the ALJ failed to discuss Dr. Cox's findings with respect to claimant's functional limitations (Tr. 277). Dr. Cox found that claimant had mild limitations in

-7-

activities of daily living, moderate difficulties in maintaining social functioning and concentration, persistence, or pace, and no episodes of decompensation (Tr. 277). These are the *only* findings in the record related to claimant's mental health-related functional limitations. Dr. Cox also performed a Mental Residual Functional Capacity Assessment, which was improperly ignored by the ALJ, in which he found that claimant had marked limitations in two of twenty categories, moderate limitations in nine categories, and no limitations in nine categories (Tr. 281-82). Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *4 ("[T]he [ALJ] . . . must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists. . . . RFC assessments by State agency medical or psychological consultants or other program physicians or psychologists are to be considered and addressed in the decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment(s).").

It was error for the ALJ to use only those portions of the medical records that supported his determination that the claimant's depression was not severe. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (noting that ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("[The] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted]. *See also Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the

uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Because the ALJ failed to properly analyze the evidence of the claimant's mental impairments, the decision of Commissioner must be reversed and the case remanded to the ALJ for proper analysis. If on remand the ALJ finds that the claimant *does* have severe impairments, he should assess her RFC and determine what work she can perform, if any, and decide ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 31st day of March, 2011.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma